THE STATE v. BALDWIN.

1. **Murder:** IN PRODUCING ABORTION: INDICTMENT: TWO COUNTS. Where in the two counts of an indictment only one offense is charged, to-wit, the murder of a named woman by an attempt to produce an abortion upon her, and in the first count it is charged to have been committed with some instrument to the grand jurors unknown, and, in the second, by administering certain drugs to the grand jurors unknown, *held* that the indictment was not bad for duplicity. (See Code, sec. 4300.)

The State v. Baldwin.

2. ———: ——°——: ———: FIRST OR SECOND DEGREE. Neither count of the indictment in this case (see opinion) charges murder in the first degree, as neither charges an intent to take life. (See *State v. Gillick*, 7 Iowa, 312, and *State v. Johnson*, 8 Iowa, 525.)

3. ———: INDICTMENT FOR FIRST DEGREE: TRIAL FOR SECOND. Although an indictment charges murder in the first degree, the state may waive a trial for that degree and insist upon a conviction for a lesser degree of the offense.

4. ———: ACCESSORY BEFORE THE FACT: INDICTMENT: EVIDENCE. Since an accessory before the fact is a principal, under Code, section 4314, there is no variance between an indictment charging defendant as principal, and evidence which shows him to have been an accessory before the fact.

5. ———: DYING DECLARATIONS: ADMISSIBILITY: QUESTION FOR COURT. It is the province of the judge, and not of the jury, to determine, from all the surrounding circumstances, whether, in a prosecution for murder, the dying declarations of the deceased are admissible. (See *State v. Elliott*, 45 Iowa, 487.)

6. ———: ———: ——.: CONSCIOUSNESS OF DANGER. Declarations made by decedent after she had heard her physician express the opinion that her symptoms were as bad as they could be, and that she might die at any time, and after she had expressed the belief that she was going to die, were admissible as dying declarations, as against the objection that she was not conscious of her danger when she made them.

7. ———: ———: CHARACTER OF: ADMISSIBILITY. The dying declarations of the deceased are not admissible against the defendant in a prosecution for murder, unless they are restricted to the act of killing and to the circumstances immediately attending it, and form a part of the *res gestæ;* and they must relate to facts, and not to mere matters of opinion or belief. Accordingly, where the defendant was charged with the death of decedent, caused by an attempt to produce an abortion upon her by the use of instruments or drugs, used or administered either by himself or some one else, *held* that her dying declarations as follows: "He is the cause of my death. Oh, those horrible instruments! Laws. [defendant] is the cause of my death,—he is my murderer. They abused me terribly," were improperly admitted.

*Appeal from Jefferson District Court.*—HON. H. C. TRAVERSE, Judge.

FILED, MAY 8, 1890.

THE indictment returned against the defendant is in two counts, the charging part of each being as follows: "The said Lawson J. Baldwin, on or about the

twenty-eighth day of June, in the year of our Lord one thousand, eight hundred and eighty-five, in the county aforesaid, in and upon the body of one Mattie Rodabaugh, then and there being, wilfully, feloniously, premeditatedly, and with malice aforethought, did commit an assault with some instruments to the grand jury unknown, then and there held in the hands of the said Lawson J. Baldwin; and then and there said Lawson J. Baldwin did wilfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, thrust into the body and puncture and lacerate the womb and private parts of said Mattie Rodabaugh, then and there and thereby wilfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, inflicting upon the body, womb and private parts of the said Mattie Rodabaugh, who was then and there a pregnant woman, mortal wounds, the number of which is to the grand jurors unknown, of which mortal wounds the said Mattie Rodabaugh, in Van Buren county, Iowa, on the eighth day of July, A. D. 1885, then and there did die. And the grand jurors aforesaid further aver and charge that the said defendant, Lawson J. Baldwin, at said time and place, and in the manner and by the means aforesaid, thrust into the body, womb and private parts of the said Mattie Rodabaugh said unknown instruments, with intent to produce a miscarriage of said Mattie Rodabaugh, the said miscarriage not being necessary to save the life of said Mattie Rodabaugh, contrary to and in violation of the law. *Second count.* The said Lawson J. Baldwin, on or about the twenty-eighth day of June, in the year of our Lord one thousand, eight hundred and eighty-five, in the county aforesaid, in and upon the body of one Mattie Rodabaugh, a pregnant woman, then and there being, wilfully, deliberately, feloniously, premeditatedly, and with malice aforethought, did commit an assault, and then and there the said Lawson J. Baldwin did wilfully, deliberately, premeditatedly, and of his malice aforethought, and with the intent to produce the

miscarriage of said Mattie Rodabaugh, administer and cause to be taken by said Mattie Rodabaugh certain drugs, substances, and medicines, to the grand jurors unknown, the same not being necessary to save the life of the said Mattie Rodabaugh, then and there being, and thereby wilfully, deliberately, premeditatedly, and of his malice aforethought, causing the said Mattie Rodabaugh, by means of said drugs, substances and medicines, to sicken and languishingly live, and on the eighth day of July, A. D. 1885, in Van Buren county, state of Iowa, to die, contrary to and in violation of law." The defendant having pleaded not guilty, the case was tried to a jury, and a verdict of "guilty of murder in the second degree" returned. Defendant moved for a new trial, and in arrest of judgment, which motions were overruled, and judgment entered on the verdict; to all of which the defendant excepted, and from which he appeals.

*M. A. McCoid* and *W. A. Work*, for appellant.

*John Y. Stone*, Attorney General, and *J. S. McKemey*, Special Prosecutor, for appellee.

GIVEN, J.—I. Our attention is first directed to the overruling of the defendant's motion in arrest of judgment. The grounds of his motion are that the indictment is void for duplicity, "in that it charged the offense in two inconsistent groups of facts;" that the indictment charges murder in the first degree, and the defendant was put upon trial thereunder for murder in the second degree; that the offense charged, as disclosed in the evidence, is one of necessity before the fact, and the indictment does not disclose any party with whom defendant is charged to have associated in the commission of the offense, and because on the whole record no legal judgment can be pronounced. "The indictment must charge but one offense, but it may be charged in different forms to meet the testimony." Code, sec. 4300. There is but one offense

*1. MURDER: in producing abortion: indictment: two counts.*

charged in this indictment, the murder of Mattie Rodabaugh. In the first count it is charged to have been committed with some instrument to the grand jurors unknown, and in the second by administering and causing to be taken certain drugs, substances and medicines, to the grand jurors unknown.

We do not think that either count charges murder in the first degree, as neither charges an intent to take life. *State v. Gillick*, 7 Iowa, 312; *State v. Johnson*, 8 Iowa, 525. We think the indictment charges murder in the second degree, and, therefore, the defendant was rightly put upon trial for that offense.

If the indictment did charge murder in the first degree, the state would certainly have the right to waive a trial as to that degree, and claim a conviction for any lesser degree embraced in the charge. Such a case would differ materially from those referred to, wherein the party was put upon trial for a higher degree than that charged.

There is a view of the testimony, and probably the most tangible one, that would make the defendant guilty as an accessory before the fact, if guilty at all. Code, section 4314, is as follows : "The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried and punished as principals." It follows from this provision of the statute that there was no variance between the charge in the indictment and the testimony. We discover no reason in the record why a legal judgment could not be pronounced, and, therefore, conclude that there was no error in overruling the defendant's motion in arrest of judgment.

II. On the trial the court admitted, over defendant's objections, testimony as to statements made by

Mattie Rodabaugh, deceased, as her dying declarations. The grounds of defendant's objections were that it was not shown that deceased was conscious of her danger, and had given up all hopes of recovery at the time of making the statements; that she was not conscious and sane at the time; and that the statements are not declarations of admissible facts.  "The rule is well settled that dying declarations, to show the fact itself and the person by whom the mortal injury was inflicted, can only be given in evidence when they are made under a sense of impending death.  *  *  *  It must appear that they were made by the person injured in the full belief that he should not recover.  *  *  *  It must satisfactorily appear that, at the time of making them, the deceased was conscious of his danger, and had given up all hopes of recovery.  *  *  *  It is not necessary to prove by expressions of the deceased that he is apprehensive of immediate death, if it appears that he does not expect to survive the injury." *State v. Nash*, 7 Iowa, 378; 6 Amer. & Eng. Cyclop. Law, "Dying Declarations," and cases cited therein.  The circumstances under which the declarations were made are to be shown to the judge; it being his province, and not that of the jury, to determine whether they are admissible.  The courts uniformly hold that the competency of such testimony is to be determined by the judge, in view of the surrounding and attending circumstances.  *State v. Elliott*, 45 Iowa, 487.  Deceased became ill at the house of Aaron Culbertson, in Fairfield, from where she was taken, July 2, to her father's house some miles distant.  Dr. Pitt Norris, who was called to attend her, pronounced her beyond the hope of recovery.  She continued to grow worse until the time of her death, July 8.  On the day the doctor was called she expressed to him a fear of dying, and wanted to know if he could do anything for her, and he said her symptoms were just as bad as they could be, but that he would do everything he could for her.  He says:  "I do not know whether it cheered her

up or not. I formed and expressed the opinion that she might die at any time, at the first and subsequent visits that day, and she heard me express it." On the day she was brought home, and repeatedly thereafter, she expressed to her father and others the belief that she was going to die, and on one or two occasions she expressed a desire to live. In view of her condition, what was said to her by her physician and others, and her own expressions, we think she was conscious of her danger, and had given up all hope of recovery from the time she was brought home.

III. Dying declarations are statements of material facts concerning the cause and circumstances of homicide, made by the victim under a solemn belief of impending death. They are restricted to the act of killing, and to the circumstances immediately attending it, and form a part of the *res gestæ*. When they relate to former and distinct transactions, and embrace facts or circumstances not immediately connected with the declarant's death, they are inadmissible. They are admissible only as to those things to which the deceased would have been competent to testify. They must relate to facts, and not mere matters of opinion or belief. 6 Amer. & Eng. Cyclop. Law; *State v. Clemons*, 51 Iowa, 274. There is no question but that the declarations relied upon were spoken with reference to the defendant. They are as follows: "He is the cause of my death. Oh, those horrible instruments! Laws. is the cause of my death, he is my murderer. They abused me terribly." We infer from the record that one of the theories of the prosecution, and probably the only one, was that defendant had gotten the deceased with child, and that he attempted to produce an abortion upon her by the use of instruments or drugs, or that he procured some one else to do so, and that death resulted. We also understand one theory of the defense to be that the deceased produced or attempted to produce an abortion upon herself that caused her death. We have seen that the

7. ——:——: character of admissibility.

declarations are restricted to the act of killing, and to the circumstances immediately attending it, and that they must form a part of the *res gestæ;* that when they relate to former and distinct transactions, and embrace facts or circumstances not immediately relating or connected with the declarant's death, they are inadmissible. These declarations did not necessarily refer to any attempt to produce an abortion. They are as plainly referable to the former relations of the parties. If it be true that the defendant had gotten the deceased with child, then her declarations were such as she might naturally make in her extremity, about her seducer, without intending to charge him with any more than her seduction. The expression, "Oh, those horrible instruments!" may indicate that instruments were used, but in no wise charges the defendant with having used them or aided in their use. We have seen that dying declarations must relate to facts, and not to mere expressions of opinion or belief. It has been held that where a person dying from a gun-shot declares that "A. shot me. A. killed me. A. is my murderer,"—would be admissible as the statement of a fact because of the circumstances. To say under such circumstances, "A. is my murderer," would not be an expression of opinion with respect to the degree of the homicide, but a statement of the fact that A. had inflicted the mortal wound. Not so, however, with these declarations. They cannot be considered as stating as a fact that defendant had anything to do with attempting to or producing an abortion. "The rule that dying declarations should point distinctly to the cause of death, and to the circumstances producing and attending it, is one that should not be relaxed. Declarations at the best are uncertain evidence, liable to be misunderstood, imperfectly remembered, and incorrectly stated. As to dying declarations there can be no cross-examination. The condition of the declarant in his extremity is often unfavorable to clear recollection, and to the giving of a full and complete account of all the particulars which it might be

important to know. Hence all vague and indefinite expressions, all language that does not distinctly point to the cause of death and its attending circumstances, but requires to be aided by inference or supposition in order to establish facts tending to criminate the repondent, should be held inadmissible." *State v. Center*, 35 Vt. 378. Our conclusion is that the court erred in admitting these declarations, and that such ruling was prejudicial to the defendant. As for this reason the judgment of the district court must be reversed, we need not further notice the errors assigned, as those not considered will not arise in a retrial.

REVERSED.